IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEPTUNE TECHNOLOGIES & BIORESSOURCES, INC., <br><br> PLAINTIFF, <br><br> v. <br><br> AKER BIOMARINE AS, AKER BIOMARINE ANTARCTIC AS, AKER BIOMARINE ANTARTIC USA, INC., SCHIFF NUTRITION GROUP, INC., and SCHIFF NUTRITION INTERNATIONAL, INC., <br><br> DEFENDANTS. | Civil Action No.: _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Neptune Technologies & Bioressources, Inc. ("Neptune") alleges as follows:

## THE PARTIES

1. Neptune is a corporation organized and existing under the laws of Québec, with its principal place of business at Suite 200, 225 Promenade du Centropolis, Laval, Québec, H7T 0B3 Canada. Neptune is an industry-recognized leader in the innovation, production and formulation of science-based and clinically-proven novel omega-3 phospholipid products for the nutraceutical and pharmaceutical markets. Among Neptune's products is NKO®, the first clinically proven omega-3 phospholipid product that has demonstrated clinical activity in managing hyperlipidemia, chronic inflammation, premenstrual syndrome, and cognitive health.

2. On information and belief, Respondent Aker BioMarine AS ("Aker") is a corporation organized and existing under the laws of Norway, with its principal place of business at Fjordalleen 16 P.O. Box 1423 Vika, Oslo, Norway.

{00727600;v1}

3. On information and belief, AkerBioMarine AS is the successor to the assets, rights, obligations, and operations of the entity formerly known as Aker BioMarine ASA. Specifically, on January 15, 2013, Aker BioMarine ASA merged with Aker Seafood Holding AS. *See* Exhibit 1. Under the terms of the merger, all of Aker BioMarine ASA's assets, rights, and obligations were transferred to Aker Seafood Holding AS. *See* Exhibit 2 at Section 1. In connection with the merger, Aker BioMarine ASA was dissolved, and Aker Seafood Holding AS changed its name to Aker BioMarine AS ("Aker BioMarine"). *See id.* at Section 1; Exhibit 1. On information and belief, Aker BioMarine AS has assumed all operations previously undertaken by Aker BioMarine ASA[1]. *See* Exhibit 2 at Section 2.

4. On information and belief, Defendant Aker BioMarine Antarctic AS ("Aker Antarctic") is a wholly-owned subsidiary of Aker and is a corporation organized and existing under the laws of Norway with an office registered at J.M. Johansens vei 99, 8340 Stamsund, Norway.

5. On information and belief, Defendant Aker BioMarine Antarctic USA, Inc. ("Aker USA") is a wholly-owned subsidiary of Aker Antarctic and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 10 Newport Way NW, Suite D, Issaquah, WA 98027.

6. On information and belief, Defendant Schiff Nutrition Group, Inc. ("Schiff Group") is a corporation organized and existing under the laws of the State of Utah with its principal place of business at 2002 South 5070 West, Salt Lake City, UT 84104-4726.

---

[1] Thus, for purposes of this Complaint, it is assumed that all operations previously undertaken by Aker BioMarine ASA are now undertaken by Aker BioMarine AS.

7. On information and belief, Defendant Schiff Nutrition International, Inc. ("Schiff International") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 2002 South 5070 West, Salt Lake City, UT 84104-4726.

## JURISDICTION AND VENUE

8. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

10. This Court has personal jurisdiction over Aker because, on information and belief, Aker knowingly and deliberately places infringing krill oil containing omega-3 phospholipids into the stream of commerce with the intention that it will be imported into the United States where it will be offered for sale, sold, and distributed within the United States, including in this District.

11. This Court has personal jurisdiction over Aker Antarctic because, on information and belief, Aker Antarctic offers for sale and sells krill oil containing omega-3 phospholipids under the name Superba™ in the United States and within this District.

12. In the alternative, to the extent that Aker and/or Aker Antarctic are otherwise not subject to the jurisdiction of this Court or of any other U.S. federal district court, this Court has personal jurisdiction over Defendants Aker and Aker Antarctic pursuant to Federal Rule of Civil Procedure 4(k)(2). This complaint arises under federal law and Defendants Aker and Aker

Antarctic have sufficient contacts with the U.S. as a whole to satisfy due process standards and justify application of federal law.

13. On information and belief, Aker and Aker Antarctic systematically and continuously target the United States by causing their infringing krill oil containing omega-3 phospholipids to be imported into the United States where it is then offered for sale, sold, and distributed. Aker's website (www.akerbiomarine.com) expressly acknowledges its efforts within the United States, by, for example, (1) detailing the presence of its krill oil containing omega-3 phospholipids within the United States, (2) detailing the purported commercial success of its krill oil containing omega-3 phospholipids through sales within the United States, and (3) communicating to its investors and the general worldwide public at-large that the United States is its most important market for its krill oil containing omega-3 phospholipids.

14. Upon information and belief, Aker represents itself as a global biotechnology company with a presence in at least the United States, South America, Europe, Asia and Australia (see www.akerbiomarine.com). As described by Aker, "Aker BioMarine's business is to produce and sell high-value marine ingredients derived from krill. These marine ingredients are used in health-promoting dietary supplements for humans and in growth and health-promoting feed additives for farmed fish and animal feed. The Group's core business activities comprise the parent company Aker BioMarine ASA and the wholly owned subsidiary Aker BioMarine Antarctic AS." Exhibit 3.

15. For several years, Aker has focused efforts on the United States as a country where it can sell its krill oil containing omega-3 phospholipids. Indeed, on or about September 2, 2009, Aker first entered the US market and announced that it had entered into an exclusive

supply agreement for the company's Superba™ Krill Oil with Defendant Schiff. Exhibit 4. In doing so, Aker described this relationship as a "major breakthrough for Aker BioMarine in the US market." *Id.* Shortly thereafter, Aker issued another press release declaring that the Mercola Group, located in the United States, had selected Aker as its exclusive supplier of krill oil. Exhibit 5. In that same press release, Aker's President and CEO Hallvard Muri stated "the agreement with Mercola further strengthens Aker BioMarine's position in the US market." *Id.* Upon information and belief, on or about the same time, Aker further paved its path into the United States by entering into additional agreements with US companies, including Swanson and Doctor's Best. Exhibit 6.

16. Aker's breakthrough into the US Market earned the company approximately 36 Million Norwegian Kroner ("NOK") (approx. 6.3 Million USD at current exchange rate) in revenue based on sales in the United States in 2009. *Id.* Seeing potential for continued growth in the US market, Aker vowed to its shareholders that it is "committed in 2010 to further growth in the US." *Id.*

17. Aker's efforts to target and increase its presence in the United States continued in 2010. Indeed, in 2010, Aker established a local office in the US (Defendant Aker USA) with employees to support development of its krill oil containing omega-3 phospholipids. Exhibit 7. According to Aker's 2010 Annual Report, it enjoyed approximately 146 Million NOK (approximately 26 Million USD at current exchange rate) operating revenue based on sales in the United States and declared that it had momentum moving into 2011 and that it will "target continued growth in US …" *Id.*

18.     Aker's presence in the United States grew even more in 2011 when it established a distribution center for its krill oil containing omega-3 phospholipids that, on information and belief, is operated by Defendant Aker USA. Exhibit 8. In that press release, Aker's Executive Vice President, Matts Johansen, further espoused the value and presence of Aker in the US market, stating that "We've been extremely pleased with the growth of our Superba Krill oil ingredients in North America" and that "[b]y bringing product distribution activities in house, our North American company will be handling all aspects of customer service ...." *Id.*

19.     Aker's presence and awareness to consumers in the United States continued to grow in 2011 as it steadily increased its advertising and marketing efforts. Aker also further cemented its ongoing presence in the US market, announcing on or about July 26, 2011, that it had expanded its supply agreement with Defendant Schiff through at least June 2016 "to provide Schiff high quality Aker BioMarine krill oil" for sale in the United States. Exhibit 9. As further evidence of the value the US market brings to Aker, the company effused to its shareholders that Superba™ Krill is the "most-selling omega-3 product in the U.S." Exhibit 3.

20.     As described above, Aker has made a deliberate and targeted effort to generate a presence in the US market for its infringing krill oil containing omega-3 phospholipids to the detriment of Plaintiff. To this day, Aker is continuing to emphasize the criticality of the US market to its continued viability. Indeed, in a recent presentation to its shareholders, Aker stated that "North America will continu[e] to be the most important market for Aker BioMarine in the future." Exhibit 10.

21. In a recent stock prospectus, Aker notes that it owns an import license allowing for importation of its krill into the United States by Aker USA. http://www.arcticsec.no/offerings_doc/abmt_prospectus_14032012.pdf, at § 7.2.5.

22. This Court has personal jurisdiction over Aker USA because, *inter alia*, it is incorporated in Delaware, and because, on information and belief, it imports into the United States infringing krill oil containing omega-3 phospholipids and knowingly and deliberately places infringing krill oil into the stream of commerce with the intention that it will be offered for sale, sold, and distributed in this District. Defendant Aker USA has previously admitted that it is subject to the personal jurisdiction of this Court. Exhibit 11.

23. This Court has personal jurisdiction over Defendant Schiff Group because, *inter alia*, on information and belief it distributes, offers for sale and/or sells infringing products containing omega-3 phospholipids in Delaware.

24. This Court has personal jurisdiction over Defendant Schiff International because, *inter alia*, it is incorporated in Delaware, and, on information and belief, it distributes, offers for sale and/or sells infringing products containing omega-3 phospholipids in Delaware. Defendant Schiff International has previously admitted that it is subject to the personal jurisdiction of this Court. *Id.*

## BACKGROUND ON THE PATENT-IN-SUIT

25. On February 26, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,383,675 ("the 675 Patent") entitled "NATURAL MARINE SOURCE PHOSPHOLIPIDS COMPRISING POLYUNSATURATED FATTY ACIDS AND

THEIR APPLICATIONS." A true and correct text copy of the '675 Patent is attached hereto as Exhibit 12. The '675 patent is generally directed to a krill extract comprising omega-3 fatty acids, including eicosapentaenoic acid ("EPA") and docosahexaenoic acid ("DHA"), attached to phospholipids, wherein the extract is suitable for human consumption.

26. Neptune is the lawful and sole owner of the '675 Patent by assignment and owns all rights, title and interest in the '675 Patent, including all rights needed to bring this action for patent infringement.

27. Neptune's krill oil, marketed as NKO®, is the oil harvested from Antarctic krill, a shrimp like crustacean that lives deep in the ocean. Krill oil is commonly sold in soft gels or in capsules. NKO® is comprised of three major components: omega-3 fatty acids, including eicosapentaenoic acid ("EPA") and docosahexaenoic acid ("DHA") attached to phospholipids; omega-3 fatty acids attached to triglycerides; and astaxanthin and other antioxidants. The phospholipids carry the EPA and DHA directly into cells, allowing the human body to absorb them very easily.

28. NKO® has been shown to benefit: a) cardiovascular health by lowering bad cholesterol and maintaining good cholesterol; b) chronic inflammation by reducing c-reactive protein (CRP) and relieving joint pain; c) premenstrual syndrome and dysmenorrheal by relieving associated symptoms; and d) cognitive function.

29. Neptune, a recognized market leader, is dedicated to investing in medical research to improve human health.

## COUNT I
### (Infringement of U.S. Patent No. 8,383,675 by Defendant Aker)

30. The allegations of paragraphs 1-29 are incorporated as though fully set forth herein.

31. Upon information and belief, Defendant Aker is infringing the '675 Patent by making, using, selling, offering to sell, and/or importing into the United States krill oil containing omega-3 phospholipids, including products sold under the trade names Superba™ Krill Oil and MegaRed®, covered by one or more claims of the '675 Patent.

32. Defendant Aker's acts of infringement have injured and damaged Neptune.

33. Defendant Aker's acts of infringement have caused irreparable injury to Neptune and will continue to cause irreparable injury until Defendant Aker is enjoined from further infringement by this Court.

## COUNT II
### (Infringement of U.S. Patent No. 8,383,675 by Defendant Aker Antarctic)

34. The allegations of paragraphs 1-29 are incorporated as though fully set forth herein.

35. Upon information and belief, Defendant Aker Antarctic is infringing the '675 Patent by making, using, selling, offering to sell, and/or importing into the United States krill oil containing omega-3 phospholipids, including products sold under the trade name Superba™ Krill Oil and MegaRed®, covered by one or more claims of the '675 Patent.

36. Defendant Aker Antarctic's acts of infringement have injured and damaged Neptune.

37. Defendant Aker Antarctic's acts have caused irreparable injury to Neptune and will continue to cause irreparable injury until Defendant Aker Antarctic is enjoined from further infringement by this Court.

### COUNT III
### (Infringement of U.S. Patent No. 8,383,675 by Defendant Aker USA)

38. The allegations of paragraphs 1-29 are incorporated as though fully set forth herein.

39. Upon information and belief, Defendant Aker USA is infringing the '675 Patent by making, using, selling, offering to sell, and/or importing into the United States krill oil containing omega-3 phospholipids, including products sold under the trade name Superba™ Krill Oil and MegaRed®, covered by one or more claims of the '675 Patent.

40. Defendant Aker USA's acts of infringement have injured and damaged Neptune.

41. Defendant Aker USA's acts have caused irreparable injury to Neptune and will continue to cause irreparable injury until Defendant Aker USA is enjoined from further infringement by this Court.

### COUNT IV
### (Infringement of U.S. Patent No. 8,383,675 by Defendants Schiff Group and Schiff International)

42. The allegations of paragraphs 1-29 are incorporated as though fully set forth herein.

43. Upon information and belief, Defendants Schiff Group and Schiff International are infringing the '675 Patent by using, selling, offering to sell, and/or importing into the United

States krill oil products containing omega-3 phospholipids, including products sold under the trade name MegaRed®, covered by one or more claims of the '675 Patent.

44.  Defendants Schiff Group's and Schiff International's acts of infringement have injured and damaged Neptune.

45.  Defendants Schiff Group's and Schiff International's acts have caused irreparable injury to Neptune and will continue to cause irreparable injury until Defendant Schiff is enjoined from further infringement by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Neptune requests the following relief:

a.  judgment that Defendant Aker has infringed and is infringing the '675 Patent;

b.  judgment that Defendant Aker Antarctic has infringed and is infringing the '675 Patent;

c.  judgment that Defendant Aker USA has infringed and is infringing the '675 Patent;

d.  judgment that Defendant Schiff Group has infringed and is infringing the '675 Patent;

e.  judgment that Defendant Schiff International has infringed and is infringing the '675 Patent;

f.  a permanent injunction preventing Defendant Aker and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and customers, and those

in active concert or participation with any of them, from making, using, importing, offering to sell or selling any krill oil and/or products containing krill oil and/or products containing omega-3 phospholipids that infringe any claim of the '675 Patent, including Superba™ krill oil;

      g.    a permanent injunction preventing Defendant Aker Antarctic and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and customers, and those in active concert or participation with any of them, from making, using, importing, offering to sell or selling any krill oil and/or products containing krill oil and/or products containing omega-3 phospholipids that infringe any claim of the '675 Patent, including Superba™ krill oil

      h.    a permanent injunction preventing Defendant Aker USA and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and customers, and those in active concert or participation with any of them, from making, using, importing, offering to sell or selling any krill oil and/or products containing krill oil and/or products containing omega-3 phospholipids that infringe any claim of the '675 Patent, including Superba™ krill oil;

      i.    a permanent injunction preventing Defendant Schiff Group and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and customers, and those in active concert or participation with any of them, from making, using, importing, offering to sell or selling any krill oil and/or products containing krill oil and/or products containing omega-3 phospholipids that infringe any claim of the '675 Patent, including MegaRed® krill oil;

j. a permanent injunction preventing Defendant Schiff International and its officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and customers, and those in active concert or participation with any of them, from making, using, importing, offering to sell or selling any krill oil and/or products containing krill oil and/or products containing omega-3 phospholipids that infringe any claim of the '675 Patent, including MegaRed® krill oil;

k. judgment against Defendant Aker for money damages sustained as a result of its infringement of the '675 Patent in an amount to be determined at trial;

l. judgment against Defendant Aker Antarctic for money damages sustained as a result of its infringement of the '675 Patent in an amount to be determined at trial

m. judgment against Defendant Aker USA for money damages sustained as a result of its infringement of the '675 Patent in an amount to be determined at trial;

n. judgment against Defendant Schiff Group for money damages sustained as a result of its infringement of the '675 Patent in an amount to be determined at trial;

o. judgment against Defendant Schiff International for money damages sustained as a result of its infringement of the '675 Patent in an amount to be determined at trial

p. an award of pre-judgment interest;

q. costs and reasonable attorneys' fees incurred in connection with this action pursuant to 35 U.S.C § 285; and

r. such other and further relief as this Court finds just and proper.

## JURY DEMAND

Plaintiff Neptune requests trial by jury.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____
John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Plaintiff*
*Neptune Technologies & Bioressources, Inc.*

*Of Counsel:*

Jonathan G. Graves
Tryn T. Stimart
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000
jgraves@cooley.com
tstimart@cooley.com

Dated: February 28, 2013